ORIGINAL

FILED
SEP 1 2 2005
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| SLUSCA, LLC, by and through WILLIAM B. GUZY, A Partner Other Than The Tax Matters Partner, | § | |
| Plaintiff, | § | |
| v. | § | No. ________ |
| UNITED STATES OF AMERICA, | § | |
| Defendant. | § | |

**COMPLAINT FOR READJUSTMENT OF PARTNERSHIP ITEMS UNDER CODE § 6226**

1. Plaintiff SLUSCA, LLC, by and through William B. Guzy, a Notice Partner other than the Tax Matters Partner, brings this federal income tax partnership proceeding under Appendix F of the Rules of the United States Court of Federal Claims and section 6226(a) of the Internal Revenue Code (the "Code")[1] to contest the findings of the Internal Revenue Service in the Notice of Final Partnership Administrative Adjustment dated April 14, 2005 ("FPAA").

## I. Parties

2. SLUSCA, LLC, EIN 06-1636773 ("SLUSCA") is a limited liability company formed under the laws of the State of Delaware. It is treated as a partnership for federal income tax purposes. Its principal place of business is 20 Dayton Avenue, Greenwich, Connecticut 06830. SLUSCA filed its United States Partnership Returns (Form 1065) for December 24, 2001 and December 31, 2001 with the Internal Revenue Service Center in Ogden,

[1] All section references are to the Internal Revenue Code of 1986, as amended and in effect during the year at issue, unless otherwise specified.

Utah. SLUSCA filed its Form 1065 for December 31, 2002 with the Internal Revenue Service Center in Cincinnati, Ohio.

3. William B. Guzy ("Guzy"), TIN xxx-xx-4204, an individual, is a member and a notice partner of SLUSCA.

4. Guzy has an interest in the outcome of this action because the partnership items of SLUSCA have not become non-partnership items by reason of one or more of the events described in Code § 6231(c) and because the period of limitations for assessment of partnership items against SLUSCA has not expired.

5. For the 2001 and 2002 federal income tax years, Guzy filed a joint return with his wife, Julie L. Guzy. Julie Guzy is treated as an indirect partner of SLUSCA, pursuant to Code § 6231(a)(2).

6. The tax matters partner of SLUSCA is KSHER AA, LLC ("KSHER"). Its address is 20 Dayton Avenue, Greenwich, Connecticut 06830.

7. Such tax matters partner has not filed a complaint for readjustment of partnership items within the period specified in Code § 6226(a).

8. Guzy is a notice partner of SLUSCA, pursuant to Code § 6231(a)(8). His address is 4306 East Gull Lake Drive, Hickory Corners, Michigan 49060.

9. The Defendant is the United States of America with respect to the claims and actions by its agent, the Internal Revenue Service ("IRS"), an executive agency within the Department of the Treasury. Service of process may be made on Defendant through the Attorney General of the United States, at the Tax Division of the Department of Justice and upon such other offices or individuals as may be required.

## II. Statement of the Case

10. SLUSCA, through one of its notice partners, hereby seeks (i) a refund (with interest provided by law) of the $1,670,923 in federal income taxes erroneously, arbitrarily, and illegally collected by the IRS; (ii) a determination of the twelve substantive partnership items set forth in the FPAA; and (iii) a determination of the partnership level defenses relating to the penalties asserted in the FPAA. The FPAA was issued by the IRS, Technical Services Territory Manager, Midwest Area, St. Paul, Minnesota 55101. The adjustments relate to the partnership tax years ended December 24, 2001, December 31, 2001, and December 31, 2002. The IRS issued a copy of the FPAA to Guzy, which is attached hereto as Exhibit A and incorporated herein by reference.

11. The FPAA disallows partnership losses in the amount of $10,331,629 for the tax year ended December 31, 2001 and $2,162,994 for the tax year ended December 31, 2002; makes certain adjustments to transferred capital, ordinary dividends, and net short-term capital gains; disallows $31,812 in certain reported partnership deductions in 2002; states twelve determinations with respect to the adjustment to substantive partnership items; and asserts four alternative forms of penalties under Code § 6662. All adjustments and explanations in the FPAA are disputed.

## III. Jurisdiction

12. Code § 6226(b) and 28 U.S.C. § 1508 confer jurisdiction on this Court.

## IV. Deposit

13. By letter dated September 8, 2005, Guzy deposited $1,670,923 with the IRS at 316 North Robert Street, St. Paul, Minnesota 55101. A copy of the letter and the check sent to the Internal Revenue Service representing the deposit is attached hereto as Exhibit B. In

accordance with Code § 6226(e), the deposit represents the amount by which Guzy's tax liability would be increased under the adjustments asserted in the FPAA issued by the Internal Revenue Service.

### V. Assignments of Error

14. The adjustments in the FPAA are based on the following errors:

a. The Commissioner erroneously determined that neither SLUSCA nor its purported partners have established the existence of SLUSCA as a partnership as a matter of fact.

b. The Commissioner erroneously determined that "[e]ven if SLUSCA, LLC existed as a partnership, this purported partnership was formed and/or availed of solely for purposes of tax avoidance by artificially overstating basis in the partnership interests of its purported partners and engaging in the options transactions." The Commissioner further erroneously determined that "the formation of SLUSCA, LLC, the acquisition of any interest in this purported partnership by its purported partners, its purchase and sale of offsetting options, its transactions involving said options, the transfer of offsetting options to SLUSCA, LLC in return for a partnership interest, and the transfer of partnership interests in SLUSCA, LLC among its partners, had no business purpose other than tax avoidance, lacked economic substance, and, in fact and substance, constitutes an economic sham for federal income tax purposes." The Commissioner further erroneously determined that "SLUSCA, LLC and the transactions described above shall be disregarded in full and (1) any purported losses resulting from these transactions are not allowable as deductions; (2) increases to the adjusted basis of partnership interests are not allowed for federal income tax purposes; and (3) the splitting of gains and losses from these options transactions among the partners of SLUSCA, LLC is not allowed."

c. The Commissioner erroneously determined that "SLUSCA, LLC was a sham, lacked economic substance and, under § 1.701-2 of the Income Tax Regulations, was formed and/or availed of in connection with a transaction or transactions in taxable years 2001 and 2002, a principal purpose of which was to reduce substantially the present value of its partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code." The Commissioner further erroneously determined that "SLUSCA, LLC is disregarded and that all transactions engaged in by this purported partnership are treated as engaged indirectly by its purported partners." The Commissioner further erroneously determined that "the assets purportedly acquired by SLUSCA, LLC, including but not limited to options, were acquired directly by its purported partners." The Commissioner further erroneously determined that "the option(s), purportedly contributed to, acquired by, or assumed by SLUSCA, LLC, are treated as never having been contributed to, acquired by, or assumed by said partnership and any gains or losses purportedly realized by SLUSCA, LLC on the option(s) are treated as having been realized by its partners." The Commissioner further erroneously determined that "the purported partners of SLUSCA, LLC should be treated as not being partners in SLUSCA, LLC." The Commissioner further erroneously determined that "[c]ontributions to SLUSCA, LLC will be adjusted to reflect clearly the partnership's or purported partners' income." The Commissioner further erroneously determined that "[a]llocating gains or losses from the options transactions among the partners of SLUSCA, LLC will not be recognized."

d. The Commissioner erroneously determined that "the obligations under the short positions (written call options) transferred to SLUSCA, LLC constitute liabilities for purposes of Treasury Regulation §1.752-6T, the assumption of which by SLUSCA, LLC

shall reduce the purported partners' bases in SLUSCA, LLC in the amount of $2,987,500, $4,160,300 and $4,160,300 but not below the fair market value of the purported partnership interest."

e. The Commissioner erroneously determined that "neither SLUSCA, LLC nor its purported partners entered into the option(s) positions with a profit motive for purposes of § 165(c)(2)."

f. The Commissioner erroneously determined that "even if the options(s) are treated as having been contributed to SLUSCA, LLC, the amount treated as contributed by the partners under Section 722 of the Internal Revenue Code is reduced by the amounts received by the contributing partners from the contemporaneous sales of the call option(s) to the same counter-party." The Commissioner further erroneously determined that "the basis of the contributed option(s) is reduced, both in the hands of the contributing partner(s) and SLUSCA, LLC by $2,987,500, $4,160,300 and $4,160,300." The Commissioner further erroneously determined that "any corresponding claimed increases in the outside basis in SLUSCA, LLC resulting from the contributions of the option(s) are disallowed."

g. The Commissioner erroneously determined that "the adjusted bases of the long call positions (purchased call options), and other contributions purportedly contributed to SLUSCA, LLC by its partners has not been established under I.R.C. § 723." The Commissioner further erroneously determined that "the partners of SLUSCA, LLC have not established adjusted bases in their respective partnership interests in an amount greater than zero (-0-)."

h. The Commissioner erroneously determined that "the purchase of each option by a contributing partner and the simultaneous sale of an offsetting option to the

same counterparty constituted, in fact, the acquisition of a single, unitary position by the contributing partner and that as such, the contributing partner's basis in the partnership interest created on the contribution of the offsetting position to the partnership is limited to the difference between the amount paid on the purported purchase of one option and the amount credited on the purported sale of the offsetting option."

i. The Commissioner erroneously determined that "the purported termination of the gain legs of the option spreads acquired by the partnership and the immediate replacement of the purportedly terminated legs with legs providing the partnership with the same legal entitlements as those provided by the terminated legs did not constitute a sale or exchange for federal income tax purposes." The Commissioner further erroneously determined that "[n]o gain or loss was realized on the purported termination of the legs in question and the partnership's adjusted basis in the purportedly terminated legs is decreased to reflect the non-recognition of the gain."

j. The Commissioner erroneously determined that "the Section 988 loss of $10,347,558 in the 2001 tax year and $2,162,994 in the 2002 tax year claimed by SLUSCA, LLC from its options' transactions is disallowed as it has not been established that such loss was incurred and is deductible under any provision of the Internal Revenue Code including, but not limited to I.R.C. Section 165."

k. The Commissioner erroneously determined that "it has not been established that Globinvest Ltd. became a partner in SLUSCA, LLC or that it contributed any capital amount exchange for an interest in the partnership."

l. The Commissioner determined that "the (ordinary loss/capital loss) in the amount of $XXXXXX [sic] claimed by the (the Investor) as a result of the liquidation of

(his/her/its) interest in the purported partnership is disallowed, as it has not been established that (1) the cash and/or fair market value of the property distributed exceeded the basis of (the Investor's) interest in the purported partnership and (2) the loss is allowable under any provision of the Internal Revenue Code, including section 165."

m. The Commissioner erroneously determined that "the adjustments of partnership items of SLUSCA, LLC are attributable to a tax shelter for which no substantial authority has been established for the position taken, and for which there was no showing of reasonable belief by the partnership or its partners that the position taken was more likely than not the correct treatment of the tax shelter and related transactions." The Commissioner further erroneously determined that "all of the underpayments of tax resulting from those adjustments of partnership items are attributable to, at a minimum, (1) substantial understatements of income tax, (2) gross valuation misstatement(s), or (3) negligence or disregarded rules or regulations." The Commissioner further erroneously determined that "[t]here has not been a showing by the partnership or any of its partners that there was reasonable cause for any of the resulting underpayments, that the partnership or any of its partners acted in good faith, or that any other exceptions to the penalty apply." The Commissioner further erroneously determined that "at a minimum, the accuracy-related penalty under Section 6662 of the Internal Revenue Code applies to all underpayments of tax attributable to adjustments of partnership items of SLUSCA, LLC." The Commissioner further erroneously determined that "[t]he penalty shall be imposed on the components of underpayment as follows:

(i) a 40 percent penalty shall be imposed on the portion of any underpayment attributable to the gross valuation misstatement as

provided by Sections 6662(a), 6662(b)(3), 6662(e), and 6662(h) of the Internal Revenue Code.

(ii) a 20 percent penalty shall be imposed on the portion of the underpayment attributable to negligence or disregard of rules and regulations as provided by Sections 6662(a), 6662(b)(1), 6662(c) of the Internal Revenue Code.

(iii) a 20 percent penalty shall be imposed on the underpayment attributable to the substantial understatement of income tax as provided by Sections 6662(a), 6662(b)(2), and 6662(d) of the Internal Revenue Code.

(iv) a 20 percent penalty shall be imposed on the underpayment attributable to the substantial valuation misstatement as provided by Sections 6662(a), 6662(b)(3), and 6662(e) of the Internal Revenue Code."

**VI. Facts**

15. The facts on which Plaintiff relies are as follows:

a. Guzy is the Chief Executive Officer of EPI Printers, Inc. ("EPI"). Ivan Mellema ("Mellema") and LaVerne DeYoung ("DeYoung") formed EPI in or about 1959. EPI has roughly 450 employees and nationwide sales of approximately $75 million. Mellema and DeYoung or their family members hold a 50 percent interest in EPI. They each have been with the company for over 40 years, working in a variety of sales and operations functions.

b. In 1989, EPI hired a sophisticated, experienced financial executive, Guzy. In 1990, Guzy became CEO, responsible for all operations. Guzy was trained and

educated in accounting and is a Certified Public Accountant, although he is not currently engaged in the practice of public accounting. His work experience includes employment with Arthur Andersen and Company. During the course of his career, Guzy has held senior management and financial positions with Petroleum Resources Corp., Michigan Agricultural Commodities, London Agricultural Commodities, AIS Construction, Contractor Rental Corporation, Continental Equipment Corporation, and OMNI Equipment Corporation.

c. In addition to their EPI relationship, Messrs. Guzy, DeYoung, and Mellema are co-owners of VIB, Inc., a real estate investment company, in which each owns a one-third interest. During the relevant period, the three also each owned a twenty-five percent interest in Workforce Strategies, Inc., a professional recruiting and staffing company. Through EPI, the three have also invested in Addison Graphic Solutions, Inc., a printing business, and Speedway Stadium Imaging, a company which markets and distributes products such as copyrighted photography. In addition, Guzy and Mellema are currently formulating an investment in a marketing agency specializing in advertising and marketing programs.

d. The hiring of Guzy was the most important event in EPI's history. When Guzy became Chief Executive Officer in 1990, EPI's sales for that year were approximately $10 million. In 2002, sales were approximately $66 million, a 560 percent increase from 1990. During the period from 1990 to 2002, EPI and VIB acquired or constructed facilities in the aggregate amount of $16 million in Battle Creek, Michigan, Livonia, Michigan and Indianapolis, Indiana and made additional capital expenditures of more than $27 million during the same period. In connection with the acquisition or construction of each facility or capital expenditure, DeYoung and Mellema authorized Guzy to investigate the potential acquisition, perform due diligence with respect to the matter and retain professional assistance

needed to review and complete the project. Once Guzy completed all the above, he would present the final aspects of the project to DeYoung and Mellema with his recommendation for making the investment and obtain their agreement to complete the project. Given the above results, it is obvious that this method of doing business was extremely successful.

e. As Guzy worked with Mellema and DeYoung, they became comfortable with and placed a deep trust in Guzy's experience and knowledge in financial and investment matters, and as their relationship developed into one of business partners, they came to rely upon Guzy's expertise and advice with respect to personal investments and financial information. To that end, Guzy, Mellema, and DeYoung have jointly invested in several real estate acquisitions.

f. Guzy is a sophisticated financial professional in the area of options, currency and other equity trading. In his various professional positions he was exposed to, and responsible for, a broad range of investing activities by his corporate employers, including responsibility for minimizing foreign currency risks resulting from purchasing products in overseas markets. Accordingly, he was in a position to evaluate and engage in a range of sophisticated personal investment transactions. His personal investments included equities, bonds, straddles, long and short positions, and selling of call and put options. Apart from debt and equity investing, Guzy tended to make short-term speculative trades, often utilizing leveraging methods.

g. As a financial professional, Guzy's work experience afforded him the opportunity to work with numerous investment advisory firms, and to make informed evaluations and judgments about the skills of these various firms and the viability of the investment programs they recommended. During the course of a year, Guzy had the opportunity

to meet many investment managers, either through his business dealings with other financial professionals or as a result of unsolicited contacts.

h. Based on his own research and analysis, as well as prior investing experience, Guzy believed that the foreign debt markets offered unique investment opportunities that were appropriate for his risk tolerance.

i. In 2001, Guzy was introduced to Gramercy Advisors, LLC ("Gramercy") by Paul Shanbrom and Bill Kingsley of BDO Seidman, LLP ("BDO"), the CPA firm that did accounting and tax work for EPI. BDO had also done tax consulting work for Messrs. Guzy, Mellema and DeYoung in the past. Guzy had a longstanding relationship with BDO and relied upon its business, tax, and investment advice.

j. Gramercy is a money manager and investment advisor specializing in emerging market and distressed debt investing who in 2001 managed $100 million in assets. As of April 2005, Gramercy managed $1 billion in assets.

k. Gramercy was founded in 1998 on the principle that an event-driven selection process for overvalued and undervalued debt securities offers consistently superior returns versus most other investment vehicles. Gramercy applied this approach to invest in emerging market bonds, which provided for consistently positive returns with low volatility and low correlation to traditional asset classes.

l. The management team at Gramercy had acquired significant emerging market investment experience when such individuals were employed by entities such as Lehman Brothers, Deutsche Bank, and J.P. Morgan, which they carried over to Gramercy.

m. Guzy advised DeYoung and Mellema of the investment opportunity with Gramercy. As they have many times in the past, DeYoung and Mellema

authorized Guzy to investigate the potential investment, perform due diligence with respect thereto, and retain professional assistance needed to review and complete the matter. Guzy was particularly well suited to perform these tasks with respect to this potential investment because Guzy had extensive personal experience in trading options and other debt-related investments, and the investment with Gramercy involved the potential acquisition of options and other debt investments.

n. Accordingly, Guzy did due diligence on behalf of himself, Mellema, and DeYoung about Gramercy and its trading and asset management philosophy and performance record. Guzy believed that Gramercy's investment philosophy provided greater opportunities for growth than could be achieved through other debt and equity investing. Guzy discussed his findings with Mellema and DeYoung, and they jointly agreed to undertake the investment.

o. On November 13, 2001, as part of their overall investment activities, Guzy, Mellema, and DeYoung each entered into a multi-year, multi-investment Investment Management Agreement with Gramercy. Guzy agreed to invest $300,000 with Gramercy, and Mellema and DeYoung each agreed to invest $400,000 with Gramercy.

p. Under the terms of the Investment Management Agreement, Gramercy had full discretion and authority to manage funds consistent with an agreed investment approach. That approach was to seek a superior long-term rate of return through an actively managed portfolio of primarily foreign exchange and fixed income investments in developed and developing countries. Gramercy believed that the emerging markets provided greater opportunities for growth than the developed markets.

q. Gramercy had trading authority to invest in financial instruments, securities and transactions, including foreign exchange investments and derivatives thereof, emerging market debt, and cash. In addition, Gramercy had authority to buy and sell put and call options on behalf of Guzy. Gramercy had authority to acquire these investments directly or acquire interests in investment entities which were established and managed by Gramercy, which entities themselves would be a vehicle for acquiring the investments.

r. Based on an understanding of the overall investment strategy between Gramercy and Guzy, Gramercy, on behalf of Guzy, entered into an investment strategy comprised of certain options, described in more detail below, that were market-neutral with respect to the U.S. markets. This strategy was designed to allow for potentially large returns while minimizing risk to capital.

s. In furtherance of this strategy, on December 3, 2001, Gramercy, on behalf of Guzy, entered into two spread options with Lehman Brothers International (Europe) ("Lehman") as the counter-party. Lehman is a global market-maker in new issues and other fixed income securities and equity products, including high yield and emerging market securities. It is a subsidiary of the investment firm Lehman Brothers Holdings, Inc. and was at all times an unrelated third party with respect to Guzy, Mellema, DeYoung, and Gramercy.

t. The options consisted of a call spread on a Russian Federal Bond and a put spread on a United Mexican States Bond. A spread option is a financial derivative that consists of a purchased option and a sold option with respect to an underlying financial position.

u. Specifically, Gramercy, on behalf of Guzy, purchased a call option on the Russian Federation 5.00% Global Bond ("Russian Bond") due March 21, 2030. The

option had a notional amount of US $70,000,000. The premium paid was $525,000. The option strike price was 65.00% with an expiration date of November 25, 2002.

v. To leverage the position on the purchased call option and limit the downside risk, Gramercy, on behalf of Guzy, sold a call option on the Russian Bond with a notional amount of $70,000,000. The premium received was US $518,000. The option strike price was 65.05% with an expiration date of November 25, 2002.

w. Gramercy, on behalf of Guzy, also purchased a put option on the United States Mexican Bond 8.30% Global Bond due August 15, 2031 ("Mexican Bond") with a notional amount of US $50,000,000 for a premium of US $2,500,000. The option strike price was 87.00% with an expiration date of November 25, 2002.

x. To leverage the position on the purchased put option and limit the downside risk, Gramercy, on behalf of Guzy, sold a put option on the Mexican Bond with a notional amount of US $50,000,000. The premium received was US $2,469,500. The option strike price was 86.75% with an expiration date of November 25, 2002.

y. The sold options were contingent obligations under which Guzy would not be liable unless and until Lehman exercised the option.

z. Gramercy's strategy in establishing the option positions (collectively, the "Options") was to achieve above market rates of appreciation, with a potential for very large returns if the Options were held to maturity. The Options used counterbalancing techniques that allowed for potentially large returns while minimizing risk to capital.

aa. Gramercy, on behalf of Guzy, considered investing in a previously established fund, SLUSCA, which invested in highly leveraged exotic derivatives. The fund had established management already in place, KSHER, a Gramercy affiliate owned by the co-

managing partners of Gramercy. KSHER had expertise in managing distressed and emerging market debt, and the fund offered the opportunity for Guzy to earn attractive returns that could vary both in amount and direction from Guzy's other investments.

bb. SLUSCA was an existing Delaware limited liability company formed by unrelated parties for the purpose of making financial investments, including acquiring U.S. dollar and non-U.S. dollar denominated options on foreign currencies and other assets. Meaningful investment opportunities in highly leveraged exotic derivatives may have been difficult for Guzy to acquire without the assistance of KSHER and the availability of certain entity arrangements through a fund. SLUSCA offered the opportunity to acquire a pre-assembled interest in derivative structures with management in place while employing a limited liability company to minimize risk to Guzy.

cc. KSHER and Globinvest Corporation ("Globinvest"), a Cayman Islands entity, were the initial contributors to SLUSCA.

dd. As an initial contribution, Globinvest contributed its interest in certain options entered into with Lehman as the counterparty. These option positions consisted of three pairs of complex options. The value at maturity of each position depended on the interaction of changes in value of the Euro, the U.S. dollar, certain United Mexican States Par Brady Bonds, and certain Federative Republic of Brazil Par Brady bonds.

ee. Globinvest's positions were designed to take advantage of changes in various value relationships in these instruments, taking into account that: (i) the Brazilian and Mexican bonds were both supported by government guarantees, but the guarantees had different effects because of the different levels of stability of the Mexican and Brazilian economies, and

(ii) those relative values could vary differently with respect to the Euro than they would with respect to the U.S. dollar.

ff. The nature of Globinvest's positions was that if one part of the pair rose in value, the other would tend to drop commensurately in value. The source of the profit potential was the "spread," or difference in the rise in value of one half (the "Appreciated Side"), and the fall in value of the other half (the "Depreciated Side"). The source of potential loss was that if the spread was negative, the net premiums paid to acquire the positions would be lost. The positions were structured to minimize the net premium paid relative to the potential payoff.

gg. KSHER had also entered into three pairs of option positions with Lehman as the counterparty. The value at maturity of each position depended on the interaction of changes in value of the Euro, the U.S. dollar and certain Mexican government medium-term bonds and certain Mexican government long-term bonds.

hh. KSHER's positions were designed to take advantage of possible changes in the various value relationships of those instruments, taking into account the fact that both Mexican government bonds were supported by certain guarantees, the effect of which on the value of the bonds would change as the bonds reached maturity.

ii. As with the Globinvest positions, the nature of KSHER's positions was that if one part of the pair rose in value, the other would tend to drop commensurately in value. The source of the profit potential was the spread, or difference in the rise in value of the Appreciated Side and the fall in value of the Depreciated Side. The source of potential loss was that if the spread was negative, the net premiums paid to acquire the positions would be lost. The KSHER positions were structured to minimize the net premium paid relative to the potential payoff.

jj. On December 12, 2001, Globinvest contributed its option positions and KSHER contributed its option positions to the capital of SLUSCA in exchange for membership interests therein. Prior to such contributions, KSHER had determined that the positions were assets of a type consistent with SLUSCA's aims and that it had expertise in managing assets such as the positions.

kk. Following the contributions by Globinvest and KSHER, Globinvest's interest in SLUSCA was 90 percent of all profits, losses, and capital of SLUSCA, and KSHER's interest in SLUSCA was 10 percent.

ll. At the time of the contributions of the Globinvest positions to SLUSCA, the Appreciated Sides of the Globinvest positions had aggregate unrealized gains of $12,212,289. The Depreciated Sides of the Globinvest positions had aggregate unrealized losses equivalent to $12,204,041.

mm. Based on an understanding of the overall investment strategy between Gramercy and Guzy, Gramercy, on behalf of Guzy, determined that SLUSCA's investment strategies were consistent with his investment goals. Accordingly, on December 24, 2001, Gramercy, on behalf of Guzy, purchased from Globinvest a 22.09% interest in SLUSCA, which comprised approximately 25 percent of Globinvest's interest in SLUSCA. Gramercy, on behalf of Guzy, paid $42,720 for the interest.

nn. Gramercy, on behalf of Guzy, wished to devote additional assets to SLUSCA and its investment strategy. Accordingly, in December 2001, Gramercy, on behalf of Guzy, contributed additional cash in the amount of $69,855 to SLUSCA.

oo. Gramercy, on behalf of Guzy, also determined that the Options were assets consistent with SLUSCA's aims and that KSHER had expertise in managing assets

such as the Options. Accordingly, on December 24, 2001, after KSHER agreed to have SLUSCA become the owner of the Options, Gramercy, on behalf of Guzy, transferred the Options to SLUSCA as a contribution to capital.

pp. After the purchase of Globinvest's interest and the contribution of cash and the Options, Guzy had a 25.83% membership interest in SLUSCA.

qq. SLUSCA's basis in the option positions contributed by its partners was equal to the partner's basis in the contributed options, increased by any gain recognized by the partners on the contributions.

rr. Under the SLUSCA Operating Agreement, consistent with federal income tax law, SLUSCA maintained capital accounts for its members. SLUSCA's income, gains, and losses were allocated to the members in accordance with their percentage interests, which represented the member's proportionate interest in the capital of SLUSCA.

ss. By Gramercy, on behalf of Guzy, investing in foreign exchange and fixed income investments through SLUSCA rather than directly, they (i) limited the liability exposure to the amount invested in the partnership; (ii) achieved diversification of the portfolio without the need for additional investment; (iii) obtained administration and the investment expertise of the managing partner, KSHER; and (iv) participated in highly leveraged positions through the pooling of assets and economics of scale made available through the partnership. The joint provision of services by KSHER to the partners reduced investment costs, and correspondingly increased returns.

tt. Besides the fact that investing in the partnership gave the partners access to the administrative services and investment expertise of KSHER, as was common practice with hedge fund investments, KSHER's incentive allocation fee of 20 percent of the

profits realized by the fund provided an additional incentive for KSHER to seek out profitable investments for the partnership.

uu. On December 31, 2001, SLUSCA disposed of or terminated 83 percent of the positions contributed by Globinvest in return for total consideration of 334.96 Euros.

vv. During the tax year ending December 31, 2001, SLUSCA incurred net losses and deductions of $10,331,629. Of that amount, $2,483,651 was allocated to Guzy. During 2002, SLUSCA incurred losses and deductions of $2,194,806. Of that amount, $541,394 was allocated to Guzy.

ww. SLUSCA continued trading into 2003 and beyond on behalf of its members.

xx. SLUSCA was a bona fide partnership and each transaction or series of related transactions entered into by the partnership and its partners was entered into for substantial business purposes.

yy. SLUSCA was formed to permit its partners to conduct business jointly, including investment activities through a flexible economic arrangement without incurring an entity-level tax.

zz. At all relevant times, SLUSCA has been a legally recognized entity under Delaware law.

aaa. Following its formation in 2001 and continuing into 2003 and beyond, SLUSCA engaged in business activity in its name and on its own behalf as a limited liability company.

bbb. SLUSCA generated a positive after-tax return for its partners.

ccc. Investing through a partnership fund such as SLUSCA served the important business purposes that normally cause investors, including Guzy, Mellema and DeYoung, to form limited liability companies and partnerships, such as increasing returns through centralized control and investment decisions, leverage, collateral, administrative efficiency, and consolidated cost reduction. For example, SLUSCA could alter the risk of positions held by the partnership by covering or uncovering portions of those positions.

ddd. The tax consequences to each partner of partnership operations and of transactions between the partner and the partnership accurately reflected such partner's economic arrangement and clearly reflected such partner's income (individually and collectively) under the law.

eee. SLUSCA was formed to make money from trading. Neither Guzy, nor Mellema or DeYoung, would have participated in the partnership but for the opportunity to make money and diversify their investment position. The partnership was not formed or availed of in connection with a transaction a principal purpose of which is to reduce substantially the present value of the partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Code.

fff. SLUSCA (i) acquired foreign debt positions in its own name; (ii) bought foreign debt positions in its own name; (iii) sold foreign debt positions in its own name; and (iv) conducted business as a functioning, existing limited liability company.

ggg. SLUSCA made all filings required by law. It traded and otherwise did business with unrelated parties in its name and in all respects conducted itself as a business entity distinct from its partners.

hhh. The purchased call and put options and sold call and put options contributed to SLUSCA were separate and distinct properties. Under the contractual terms of each trade confirmation, each purchased and sold call option was independently transferable and assignable and each purchased and sold call option had a different strike price. In addition, since each purchased call option and sold call option constituted a Code § 988 transaction, they cannot be integrated for income tax purposes.

iii. Treas. Reg. § 1.752-6T is invalid.

jjj. Guzy received a Form K-1 from SLUSCA reporting the partnership results, prior to filing his federal income tax returns. The SLUSCA partnership return and Forms K-1 were prepared by a qualified CPA with knowledge of the facts. SLUSCA and its partners relied on the expertise of the partnership return preparer and other advisors in preparing their returns.

kkk. SLUSCA's partners engaged well qualified advisors with significant expertise in the relevant aspects of federal tax law to evaluate the proper tax treatment of the transactions in issue.

lll. SLUSCA's partners did not attempt to limit the scope of the advisors' research or investigation. The partners secured tax opinions from prominent tax advisors, who informed them that the tax treatment of the losses from and transactions with SLUSCA were more likely than not correct.

mmm. SLUSCA filed its December 24, 2001, December 31, 2001, and December 31, 2002 returns in good faith with due and reasonable regard for the income tax rules and regulations. SLUSCA's partners relied on qualified tax professionals who were in possession of all pertinent facts and circumstances when the returns were filed and whom

SLUSCA's partners believed when the experts opined, based on an application of the law to the facts, that the position taken was more likely than not the correct position. The actions undertaken by SLUSCA's partners met and exceeded the ordinary care protected by Code §§ 6662 and 6664 in complying with the income tax rules and regulations. Neither SLUSCA nor its partners were negligent; nor did either act with intentional disregard of the rules or regulations under Code § 6662.

nnn. Neither SLUSCA nor its partners are subject to penalties under Code § 6662(b)(3) because there is no substantial or gross valuation misstatement.

ooo. No valuation misstatement exists because all transactions reflected on the returns were reported at amounts based on trading transactions with unrelated parties. No amounts on the returns were determined by "valuation," and therefore no actual misstatement of value exists. Thus, neither the 40 percent nor the 20 percent valuation misstatement penalty is applicable to SLUSCA or its partners.

ppp. SLUSCA had no substantial understatement of its income tax. Moreover, SLUSCA and any transactions at issue are not tax shelters as defined by the Code. Code § 6662(d)(2)(C) or (D). Even if a substantial understatement of income tax were ultimately determined to be due, there was substantial authority for the treatment of all items on the December 24, 2001, December 31, 2001, and December 31, 2002 returns of SLUSCA, and each partner had a reasonable basis for believing that the tax treatment of such items was more likely than not the proper treatment. Furthermore, all items were disclosed on the appropriate return, and there was a reasonable basis for the tax treatment of each item.

qqq. In all events, no penalty can or should be applied against SLUSCA, as an entity or against its partners, since all concerned proceeded in good faith based upon reasonable cause within the meaning of Code § 6664(c).

16. Accuracy-related penalties under Code § 6662 apply only to an underpayment of tax required to be shown on a return. No tax was required to be shown on SLUSCA's partnership returns. Accordingly, no penalties are determinable in this proceeding. Even if an underpayment were determined to be due, there was reasonable cause for such underpayment, and SLUSCA, through its partners, acted in good faith in reliance on their qualified tax advisors. Consequently, no penalty is due with respect to any such underpayment pursuant to Code § 6664(c). Furthermore, the FPAA is deficient with respect to the asserted penalties for failure to describe any factual basis for asserting them.

17. Pursuant to Code § 7491, Defendant bears the burden of proof as to the penalties, as well as the substantive partnership items.

18. The FPAA (upon which this partnership proceeding is statutorily based under Code § 6226) improperly adjusts "non-partnership items":

a. By statute, SLUSCA and its members are required to contest the Final Partnership Administrative Adjustment, if at all, under Code § 6226 "JUDICIAL REVIEW OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENTS."

b. Plaintiff contests the FPAA by filing this Complaint pursuant to § 6226(b).

c. Under Code §§ 6221 and 6226, partnership proceedings such as this may address only "partnership items."

d. Code § 6231(a)(3) defines a "partnership item" as an item prescribed by regulation that "is more appropriately determined at the partnership level than at the partner level." Certain determinations made by Defendant in the FPAA focus upon options entered outside the partnership by member/partners prior to joining SLUSCA.

e. Guzy, Mellema, and DeYoung contributed both cash and options to SLUSCA in exchange for their partnership interests, and their bases in their respective partnership interests reflects the contribution of both cash and options.

f. Guzy also properly included in his basis in SLUSCA professional and management fees paid in connection with the transactions.

g. The outside basis of a given partner is not required to be reported on the U.S. Partnership Return for the taxable years 2001, 2002 or any other year.

h. The individual partners' outside basis was not reported, nor was it required to be reported, on the U.S. Partnership Return filed by SLUSCA for the taxable years ending December 24, 2001, December 31, 2001, December 31, 2002, or any other year.

i. While Defendant's regulations address the partnership basis of assets contributed to or distributed by the partnership (known as "inside basis"), Defendant's regulations do not treat "outside basis" as a partnership item and certainly do not treat pre-partnership activities as a partnership item.

j. Defendant's attempt to effectively treat the contingent obligation of the individual partners under the sold options as an offsetting fixed liability is not a partnership item and must be addressed, if at all, in the individual proceedings relating to the individual partners.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

(i) for a redetermination of the FPAA to remove all adjustments to income, losses, allocations, basis and penalties;

(ii) for recovery of the $1,670,923 in taxes deposited (plus any interest permitted by law); and

(iii) for such further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

9/8/05
Dated

T.P. Fitzgerald

Thomas P. Fitzgerald
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60603
Telephone: (312) 558-5845
Facsimile: (312) 558-5700

**Internal Revenue Service** | **Department of the Treasury**

316 North Robert Street
St. Paul, Minnesota 55101

Refer To:
ESB Stop 4020BK
Taxpayer Identifying Number:
[redacted]-4204
Name of Partnership:
SLUSCA, LLC
Partnership Identifying Number:
06-1636773
Tax Year Ended:
12/24/2001, 12/31/2001, 12/31/2002
Date FPAA Mailed to Tax Matters Partner:
APR 14 2005
Person to Contact:
Bill Kahnke
41-03606
Contact Hours:
8:00 am to 4:30 pm
Contact Telephone Number:
(651) 312-7909

Date: APR 14 2005

William Guzy
4306 East Gull Lake Road
Hickory Corners, MI. 49060

## NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year shown above, and to each partner who is entitled to receive this notice.

We are proposing adjustments to the partnership items of the partnership and tax year shown above. We will send the examination report outlining these adjustments to the Tax Matters Partner (TMP) of the partnership. (The TMP is the partner designated by the partnership to deal with the IRS.) He/she is also authorized to act for the partners who are not entitled to receive this notice. Any partner who wants a copy of the examination report should request it from the TMP. If the TMP is unable to provide you with a copy of the examination report, please contact the person named in the heading of this letter.

Taxable Years Ending Before August 6, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease to the tax liability on your individual return. Form 870-P, *Agreement to Assessment and Collection of Deficiency in Tax for Partnership Adjustments*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Taxable Years Ending After August 5, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease in the tax liability on your individual return. The adjustments may include partnership level determinations regarding penalties and additions to tax that relate to adjustments to partnership items. Form 870-PT, *Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.



**EXHIBIT A**

You have three options available to you:

**1. If you agree with the adjustments:**

Sign and return the enclosed Form 870-P/Form 870-PT. When you sign Form 870-P/Form 870-PT, you are agreeing to pay any additional tax and interest resulting from the adjustments to the partnership return. For tax years ending after August 5, 1997, you are also agreeing to any partnership level determination as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items, if any. In addition, you are waiving your rights to participate in any administrative or judicial proceeding affecting partnership items and in partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items for the tax year in question. This is a binding settlement only if you sign and return Form 870-P/Form 870-PT and we sign on behalf of the Commissioner of Internal Revenue Service. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). Once the agreement is signed by both parties, you may not file a claim to change the items in question or claim a refund/credit based on a readjustment.

Note: If you are the TMP of the partnership, see the section of this letter entitled, *"For the Tax Matters Partner of the Partnership"*.

**2. If you do not agree with the adjustments:**

If you are the TMP of the partnership and want to contest the adjustments in court, you must file a petition within 90 days from the date of this letter. During this 90-day period, no other partner may file a petition for judicial review. You can file your petition for readjustment of partnership items with:

1. the United States Tax Court;
2. the United States Court of Federal Claims; or
3. the District Court of the United States, in the district of the partnership's principal place of business.

A petition filed by the TMP precludes all other actions. If the TMP doesn't file a petition by the 90th day from the date the FPAA was mailed, any partner or any 5 percent group entitled to receive this notice may petition one of these courts. A "5 percent group" includes any group of partners who together have an interest of five percent or more in profits of the partnership. The petition must be filed after the 90th day, but on or before the 150th day from the date the FPAA was mailed to the TMP. If more than one petition is filed in Tax Court, the first petition filed will go forward. All other petitions (even those filed earlier in one of the other courts) will be dismissed. If no one files a petition in Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed.

Petitions filed with the United States Tax Court must be mailed to:

**United States Tax Court**
**400 Second Street, NW**
**Washington, DC 20217**

Attach a copy of this letter to the petition. The time in which you must file a petition with the court is fixed by law and the court cannot consider your case if your petition is filed late. If this letter is addressed to both a husband and wife and both want to petition the Tax Court, both must sign the petition or each must file a separate signed petition.

When a partner (including each member of a 5 percent group that files a petition) files a petition in either the appropriate District Court or the Court of Federal Claims, the partner filing the petition must deposit the amount that the partner's tax liability would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of partnership items under the FPAA. If you reported the partnership items the way the partnership reported them on its return, you can generally determine the amount to deposit by taking your pro rata share of the partnership adjustments into account in recomputing your tax. You must deposit the appropriate amount with the IRS on or before the day you file your petition.

**3. If you do nothing:**

If a petition for readjustment is not filed in any of the courts listed in this letter, the FPAA becomes final, and we will bill you for any additional tax plus interest that you may owe under the FPAA. You will not be permitted to contest the treatment of the partnership items of the partnership under the FPAA in any refund claim or suit. The law allows the Service to bill you after 150 days from the mailing date of the FPAA to the TMP.

However, if a petition is filed in the Tax Court, and the Tax Court upholds the adjustments in whole or in part, we will not bill you until the Tax Court decision is final.

You may wish to contact the TMP of the partnership or your tax advisor to discuss this matter.

If you have any questions, please write to the person whose name and address are shown in the heading of this letter. If you write, attach a copy of this letter to help identify your account. Also, include your telephone number and the most convenient time for us to call you in case we need additional information.

If you prefer, you may call the IRS contact person at the telephone number shown in the heading of this letter. If this number is outside your local calling area, there will be a long distance charge to you.

Thank you for your cooperation.

Sincerely,

Kevin Harris

Kevin Harris BK

Technical Services Territory Manager, Midwest Area

Enclosures:
Form 870-P/Form 870-PT
Copy of this letter

## FOR THE TAX MATTERS PARTNER OF THE PARTNERSHIP

If you are the Tax Matters Partner (TMP), you are entitled to make an agreement to bind non-notice partners to the treatment of the partnership items as shown on the enclosed schedule of adjustments. You must add the following statement above the signature blocks on the Form 870-P or Form 870-PT:

"The undersigned Tax Matters Partner is signing this offer on behalf of himself (herself) and all other partners whom he (she) has the authority to bind; a final agreement resulting from the co-signature of the Commissioner of Internal Revenue will be binding on all such other partners."

As the TMP, you may submit a petition, as described above for the partnership on behalf of all partners.

If you have any questions, you can call the IRS contact person at the telephone number shown in the heading of this letter. Thank you for your cooperation.

Form **870-PT** (8-2004)

DEPARTMENT OF THE TREASURY - INTERNAL REVENUE SERVICE

# Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts

IN REPLY REFER TO:

**ESB Stop 4020**

| Taxpayer(s) name(s), address and ZIP code: | Name of Partnership: | Tax Year(s) Ended: |
|---|---|---|
| William Guzy<br>4306 East Gulf Lake Road<br>Hickory Corners, MI. 49060 | **SLUSCA, LLC**<br>Taxpayer Identifying Number: **06-1636773** | **12/24/2001 &**<br>**12/31/2001 &**<br>**12/31/2002** |
| Taxpayer Identifying Number: **[redacted]-4204** | Name of Tax Matters Partner:<br>**KSHER AA, LLC** | |

## Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts
## &
## Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached schedule of adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive the restrictions provided by IRC sections 6225(a) and 6213(a) and consent to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as determined in this agreement; plus any interest provided by law.

This agreement is conditional and will not become effective or final until this agreement form is returned to the Commissioner and is signed on his or her behalf. The one-year extension of the period of limitations on assessments under IRC section 6229(f) will not begin to run until the date the Commissioner's representative signs this form on the Commissioner's behalf. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If this part of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened in absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax and additional amounts may be filed or prosecuted.

| | |
|---|---|
| Signature of Taxpayer | Date Signed |
| Signature of Taxpayer | Date Signed |
| By (Signature and Title) | Date Signed |

| | | |
|---|---|---|
| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner | Signature |
| | Office | Title |

# INSTRUCTIONS FOR SIGNING FORM 870-PT

1. If a JOINT RETURN OF A HUSBAND AND WIFE was filed and both spouses intend to agree, both spouses should sign Form 870-PT. One spouse may sign as agent for the other if acting under a power of attorney, which, if not previously filed, must accompany this form. The IRS may accept the signature of only one spouse at its discretion. However, the agreement will only be binding on the signing spouse.

2. If the taxpayer is a corporation, the agreement should be signed with the corporate name followed by the signature and title of the officer authorized to sign Form 870-PT.

3. Your attorney or agent may sign for you if this action is specifically authorized by a power of attorney, which if not previously filed, must accompany this form.

4. If this offer is signed by a trust, the agreement must be signed with the trust name, followed by the signature and title of the person authorized to sign on behalf of the trust.

5. If this offer is with respect to the tax liability for the consolidated return year, the agreement should be signed in the name of the common parent of the consolidated group for the consolidated return year. The common parent corporation signs the agreement in its own name. The signature and title of a current officer of the common parent corporation, who is authorized to bind the corporation, should be displayed in the signature block.

6. If the Tax Matters Partner signs this offer, please include the title with the signature.

7. If this offer is signed by a Tax Matters Partner that is a subsidiary corporation, then an officer authorized to sign this agreement for the year(s) indicated on the form must sign for the parent corporation. An authorized officer for the subsidiary corporation should also sign if the Tax Matters Partner is binding non-notice partners under the agreement. See Treas. Reg. 1.1502-77(a)(3)(v).

DEPARTMENT OF THE TREASURY – INTERNAL REVENUE SERVICE

**Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts**

SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| **SLUSCA, LLC** | **12/24/2001** | **12/31/2001** | **12/31/2002** |
| TAXPAYER IDENTIFYING NUMBER: **06-1636773** | | | |
| DETAIL OF ADJUSTMENTS TO ORDINARY INCOME | | | |
| None | $-0- | $-0- | $-0- |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTAL ADJUSTMENTS TO ORDINARY INCOME | $-0- | $-0- | $-0- |
| OTHER ADJUSTMENTS | | | |
| A. **Capital Contributed during year** | | | |
| (1) ADJUSTMENT | $24,149,781 | -0- | -0- |
| (2) AS REPORTED | $24,149,781 | -0- | -0- |
| (3) CORRECTED | -0- | -0- | -0- |
| B. **M-2 – Other Increases – Transferred Capital** | | | |
| (1) ADJUSTMENT | 10,974,697 | -0- | -0- |
| (2) AS REPORTED | 10,974,697 | -0- | -0- |
| (3) CORRECTED | -0- | -0- | -0- |

REMARKS

- **Reference Exhibit A attached.**

**Accuracy Penalties under IRC Section 6662 are included as a partnership level determination. See Exhibit A, paragraph 9 for a description of the penalties.**

# Form 870-PT, Other Adjustments (Continued)

Page ____ of ____

| NAME OF PARTNERSHIP<br>SLUSCA, LLC<br>TAXPAYER IDENTIFYING NUMBER 06-1636773 | TAX YEAR(S) ENDED 12/24/2001 | 12/31/2001 | 12/31/2002 |
|---|---|---|---|
| **C M-2 – Other Decreases – Transferred Capital** | | | |
| (1) ADJUSTMENT | 10,974,697 | -0- | -0- |
| (2) AS REPORTED | 10,974,697 | -0- | -0- |
| (3) CORRECTED | -0- | -0- | -0- |
| **D. Other Portfolio Income** | | | |
| (1) ADJUSTMENT | -0- | $10,331,629 | $2,162,994 |
| (2) AS REPORTED | -0- | ($10,331,629) | ($2,162,994) |
| (3) CORRECTED | -0- | -0- | -0- |
| **E. Ordinary Dividends** | | | |
| (1) ADJUSTMENT | -0- | -0- | ($9,090) |
| (2) AS REPORTED | -0- | -0- | $9,090 |
| (3) CORRECTED | -0- | -0- | -0- |
| **F. . Net Short-term Capital Gains** | | | |
| (1) ADJUSTMENT | -0- | -0- | ($10,917) |
| (2) AS REPORTED | -0- | -0- | $10,917 |
| (3) CORRECTED | -0- | -0- | -0- |
| **G. Deductions Related to Portfolio Income** | | | |
| (1) ADJUSTMENT | -0- | -0- | $31,812 |
| (2) AS REPORTED | -0- | -0- | $31,812 |
| (3) CORRECTED | -0- | -0- | -0- |
| H. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| I. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |

**SLUSCA, LLC**

**FPAA**

EXHIBIT A

1. It is determined that neither SLUSCA, LLC nor its purported partners have established the existence of SLUSCA, LLC as a partnership as a matter of fact.

2. Even if SLUSCA, LLC existed as a partnership, this purported partnership was formed and/or availed of solely for purposes of tax avoidance by artificially overstating basis in the partnership interests of its purported partners and engaging in the options transactions. The formation of SLUSCA, LLC, the acquisition of any interest in this purported partnership by its purported partners, its purchase and sale of offsetting options, its transactions involving said options, the transfer of offsetting options to SLUSCA, LLC in return for a partnership interest, and the transfer of partnership interests in SLUSCA, LLC among its partners, had no business purpose other than tax avoidance, lacked economic substance, and, in fact and substance, constitutes an economic sham for federal income tax purposes. Accordingly, SLUSCA, LLC and the transactions described above shall be disregarded in full and (1) any purported losses resulting from these transactions are not allowable as deductions; (2) increases to the adjusted basis of partnership interests are not allowed for federal income tax purposes; and (3) the splitting of gains and losses from these options transactions among the partners of SLUSCA, LLC is not allowed.

3. It is determined that SLUSCA, LLC was a sham, lacked economic substance and, under § 1.701-2 of the Income Tax Regulations, was formed and/or availed of in connection with a transaction or transactions in taxable years 2001 and 2002, a principal purpose of which was to reduce substantially the present value of its partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code. It is consequently determined that:
   a. SLUSCA, LLC is disregarded and that all transactions engaged in by this purported partnership are treated as engaged in directly by its purported partners. This includes the determination that the assets purportedly acquired by SLUSCA, LLC, including but not limited to options, were acquired directly by its purported partners.
   b. the option(s), purportedly contributed to, acquired by, or assumed by SLUSCA, LLC, are treated as never having been contributed to, acquired by, or assumed by said partnership and any gains or losses purportedly realized by SLUSCA, LLC on the option(s) are treated as having been realized by its partners.
   c. the purported partners of SLUSCA, LLC should be treated as not being partners in SLUSCA, LLC.
   d. Contributions to SLUSCA, LLC will be adjusted to reflect clearly the partnership's or purported partners' income.
   e. Allocating gains and losses from the options transactions among the partners of SLUSCA, LLC will not be recognized.

4. It is determined that the obligations under the short positions (written call options) transferred to SLUSCA, LLC constitute liabilities for purposes of Treasury Regulation §1.752-6T, the assumption of which by SLUSCA, LLC shall reduce the purported partners' bases in SLUSCA, LLC in the amount of $2,987,500, $4,160,300 and $4,160,300 but not below the fair market value of the purported partnership interest.

5. It is determined that neither SLUSCA, LLC nor its purported partners entered into the option(s) positions with a profit motive for purposes of § 165(c)(2).

6. It is determined that, even if the option(s) are treated as having been contributed to SLUSCA, LLC, the amount treated as contributed by the partners under section 722 of the Internal Revenue Code is reduced by the amounts received by the contributing partners from the contemporaneous sales of the call option(s) to the same counter-party. Thus, the basis of the contributed option(s) is reduced, both in the hands of the contributing partner(s) and SLUSCA, LLC by $2,987,500, $4,160,300 and $4,160,300. Consequently, any corresponding claimed increases in the outside basis in SLUSCA, LLC resulting from the contributions of the option(s) are disallowed.

7. It is determined that the adjusted bases of the long call positions (purchased call options), and other contributions purportedly contributed to SLUSCA, LLC by its partners has not been established under I.R.C. § 723. It is consequently determined that the partners of SLUSCA, LLC have not established adjusted bases in their respective partnership interests in an amount greater than zero (-0-).

8. It is determined that the purchase of each option by a contributing partner and the simultaneous sale of an offsetting option to the same counterparty constituted, in fact, the acquisition of a single, unitary position by the contributing partner and that, as such, the contributing partner's basis in the partnership interest created on the contribution of the offsetting position to the partnership is limited to the difference between the amount paid on the purported purchase of one option and the amount credited on the purported sale of the offsetting option.

9. It is determined that the purported termination of the gain legs of the option spreads acquired by the partnership and the immediate replacement of the purportedly terminated legs with legs providing the partnership with the same legal entitlements as those provided by the terminated legs did not constitute a sale or exchange for federal income tax purposes. No gain or loss was realized on the purported termination of the legs in question and the partnership's adjusted basis in the purportedly terminated legs is decreased to reflect the non-recognition of the gain.

**SLUSCA, LLC**

**FPAA**

EXHIBIT A

10. It is determined that the Section 988 loss of $10,347,558 in the 2001 tax year and $2,162,994 in the 2002 tax year claimed by SLUSCA, LLC from its options' transactions is disallowed as it has not been established that such loss was incurred and is deductible under any provision of the Internal Revenue Code including, but not limited to, I.R.C. Section 165.

11. It has not been established that GlobInvest Ltd. became a partner in SLUSCA, LLC or that it contributed any capital amount in exchange for an interest in the partnership.

12. It is determined that the (ordinary loss/capital loss) in the amount of $XXXXXX claimed by (the Investor) as a result of the liquidation of (his/her/its) interest in the purported partnership is disallowed, as it has not been established that (1) the cash and/or fair market value of the property distributed exceeded the basis of (the Investor's) interest in the purported partnership and (2) the loss is allowable under any provision of the Internal Revenue Code, including section 165.

13. It is determined that the adjustments of partnership items of SLUSCA, LLC are attributable to a tax shelter for which no substantial authority has been established for the position taken, and for which there was no showing of reasonable belief by the partnership or its partners that the position taken was more likely than not the correct treatment of the tax shelter and related transactions. In addition, all of the underpayments of tax resulting from those adjustments of partnership items are attributable to, at a minimum, (1) substantial understatements of income tax, (2) gross valuation misstatement(s), or (3) negligence or disregarded rules or regulations. There has not been a showing by the partnership or any of its partners that there was reasonable cause for any of the resulting underpayments, that the partnership or any of its partners acted in good faith, or that any other exceptions to the penalty apply. It is therefore determined that, at a minimum, the accuracy-related penalty under Section 6662 of the Internal Revenue Code applies to all underpayments of tax attributable to adjustments of partnership items of SLUSCA, LLC. The penalty shall be imposed on the components of underpayment as follows:

    A. a 40 percent penalty shall be imposed on the portion of any underpayment attributable to the gross valuation misstatement as provided by Sections 6662(a), 6662(b)(3), 6662(e), and 6662(h) of the Internal Revenue Code.
    B. a 20 percent penalty shall be imposed on the portion of the underpayment attributable to negligence or disregard of rules and regulations as provided by Sections 6662(a), 6662(b)(1), 6662(c) of the Internal Revenue Code.
    C. a 20 percent penalty shall be imposed on the underpayment attributable to the substantial understatement of income tax as provided by sections 6662(a), 6662(b)(2), and 6662(d) of the Internal Revenue Code.
    D. a 20 percent penalty shall be imposed on the underpayment attributable to

the substantial valuation misstatement as provided by Sections 6662(a), 6662(b)(3), and 6662(e) of the Internal Revenue Code.

It should not be inferred by the determination of the Accuracy Related Penalty in this notice that fraud penalties will not be sought on any portion of an underpayment subsequently determined to be attributable to fraud or that prosecution for criminal offenses will not be sought under IRC § 7201, 7206 or other provisions of federal law if determined to be appropriate.

# WINSTON & STRAWN LLP

43 RUE DU RHONE
1204 GENEVA, SWITZERLAND

BUCKLERSBURY HOUSE
3 QUEEN VICTORIA STREET
LONDON EC4N 8NH

333 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-1543

35 WEST WACKER DRIVE
CHICAGO, ILLINOIS 60601-9703

(312) 558-5600

FACSIMILE (312) 558-5700

www.winston.com

200 PARK AVENUE
NEW YORK, NEW YORK 10166-4193

21 AVENUE VICTOR HUGO
75116 PARIS, FRANCE

101 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94111-5894

1700 K STREET, N.W.
WASHINGTON, D.C. 20006-3817

WRITER'S DIRECT DIAL NUMBER

312/558-8069
dtheyssen@winston.com

September 8, 2005

**VIA FEDERAL EXPRESS**
Internal Revenue Service
316 North Robert Street
St. Paul, MN 55101

Re: **SLUSCA, LLC**
**I.R.C. § 6226(e) Deposit on behalf of William B. Guzy**

Dear Sir or Madam:

Please apply the enclosed payment of $1,670,923 for William B. Guzy, TIN [redacted]-[redacted]-4204, as the deposit required under I.R.C. § 6226(e) with respect to the taxpayer's partnership interest in SLUSCA, LLC (EIN 06-1636773) during the taxable years ending December 24, 2001, December 31, 2001, and December 31, 2002.

This payment is being remitted for the purpose of allowing the taxpayer to file a petition for readjustment of the partnership items of SLUSCA, LLC, as adjusted by the attached Notice of Final Partnership Administrative Adjustment dated April 14, 2005. Please note that, pursuant to the decision of the United States Court of Appeals for the Federal Circuit in Shore v. United States, 9 F.3d 1524 (Fed. Cir. 1993), this payment does not include interest.

Should you have any questions, please do not hesitate to call me.

Sincerely,

David L. Theyssen

DLT:ndj
Enclosure
cc: William B. Guzy

**EXHIBIT B**

3463

9-9/720
526

WILLIAM B. GUZY
JULIE GUZY
DL G200-887-098-167
4306 S. GULL LAKE DR. 269-671-5313
HICKORY CORNERS, MI 49060

DATE 9/7/05

Pay to the Order of Internal Revenue Service $ 1,670,923 00/

One Million Six Hundred Seventy Thousand Nine Hundred Twenty Three & 00/100 DOLLARS

Comerica
Comerica Bank
Kalamazoo, Michigan
www.comerica.com

For

⑆072000096⑆ 6810373354⑈ 03463